No. 80–1831.  BOARD OF EDUCATION OF THE NORTH LITTLE ROCK, ARKANSAS SCHOOL DISTRICT, ET AL. *v.* DAVIS ET AL.  C. A. 8th Cir.  Certiorari denied.

JUSTICE REHNQUIST, dissenting.

Both the Court of Appeals and the District Court have treated this as a school desegregation case, as indeed it is for substantive purposes.  But in my view both the Court of Appeals and the District Court wholly failed to come to grips with the requirement that there be an Art. III controversy between the parties to the case before a federal court may either entertain it in the first instance or entertain additional proceedings in a case in which the requirements of Art. III at one time were met.  It has always been my understanding that Art. III requirements are as important in desegregation

cases as they are in quiet title cases, Fair Labor Standards Act cases, and any number of other types of cases where federal-question jurisdiction may exist. I disagree with the decision of the Court to deny certiorari in this case because, whatever the merits of the dispute as to whether petitioners have or have not achieved a "unitary" school system, litigation to prove or disprove this fact must be conducted by parties who meet the "case or controversy" test.

In *Swann* v. *Charlotte-Mecklenburg Board of Education*, 402 U. S. 1, 32 (1971), the Court stated that "once the affirmative duty to desegregate has been accomplished and racial discrimination through official action is eliminated," there is no longer a constitutional violation which would enable the district court to entertain additional litigation in that particular case. Admittedly, school desegregation cases are often long and seemingly intractable; but as the Court said in *Swann*, *supra*:

> "At some point, these school authorities and others like them should have achieved full compliance with this Court's decision in *Brown I*." *Id.*, at 31.

There is no doubt that a district court is at liberty to treat as a class action a suit filed for the purposes of attaining a "unitary" school system, but it is conceded that no class was ever certified in this case. As we said in *Pasadena City Board of Education* v. *Spangler*, 427 U. S. 424, 430 (1976):

> "Counsel for the individual named respondents, the original student plaintiffs and their parents, argued that this litigation was filed as a class action, that all the parties have until now treated it as a class action, and that the failure to obtain the class certification required under Rule 23 is merely the absence of a meaningless 'verbal recital' which counsel insists should have no effect on the facts of this case. But these arguments overlook the fact that the named parties whom counsel originally un-

dertook to represent in this litigation no longer have any stake in its outcome. As to them the case is clearly moot. And while counsel may wish to represent a class of unnamed individuals still attending the Pasadena public schools who do have some substantial interest in the outcome of this litigation, there has been no certification of any such class which is or was represented by a named party to this litigation."

We there concluded that it was only the presence of the United States as a statutorily authorized intervenor on the side of the original plaintiffs that prevented the case from becoming moot.

School desegregation cases are to the latter half of this century what utility-rate cases were to the first half of it, and what equity receivership cases were to the latter half of the 19th century. Each of these groups of cases has the potential for continued litigation which run-of-the-mine federal criminal cases on direct appeal, and other types of federal civil litigation, do not have. Perhaps because of this fact, there is a tendency on the part of both the litigants and the courts to dispense with what may be regarded as "meaningless 'verbal recital[s]'" which do not bear directly on the substantive issues of the case. But it is worth stating again, as it has been repeatedly stated before, that Art. III courts are forums of limited jurisdiction, not courts of general jurisdiction such as exist in most, if not all, of the States.

Yet the Court of Appeals in this case devoted not a single word to the conceded fact that there had been at the time of the most recent hearing in the District Court no remaining plaintiff with a stake in the outcome of the case, nor had there been any previous certification of a class action. Nor, so far as the opinions of the District Court attached to the petition as appendices reveal, did the District Court address the issue. No doubt some, if not all, of the confusion surrounding this case resulted from the appointment of Judge

Henley to the Court of Appeals, the death of Judge Shell, and the reassignment of the entire civil docket in the Eastern District of Arkansas on September 1, 1978, in anticipation of the filling of newly created judgeships. App. to Pet. for Cert. A–27.

But regrettable and unavoidable as this confusion may have been, it does not and cannot explain the failure of any of the District Court opinions or the opinion of the Court of Appeals to even address the existence of a case or controversy. From reading those opinions, one would gather that only such remedial issues as faculty assignment, scope of busing, and the like were at issue here. But I think the existence of a case or controversy sought to be saved by an unexplained granting of a motion for intervention in 1977, and not even mentioned by the Court of Appeals, has considerable significance for the federal judicial system over a wide range of cases. I would therefore grant the petition for certiorari limited to the following question, which I believe is fairly subsumed under Question II in the petition:

"Is a District Court at liberty to grant a motion for intervention in a case which has become moot, without any principled explanation therefor, or any reasoned justification of its action by the Court of Appeals, in order to continue its supervision of the operation of a school district?"